THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v BRYAN HENRY, Appellant. [41 NYS3d 527]—

Appeal by the defendant from a judgment of the Supreme Court, Nassau County (Robbins, J.), rendered April 9, 2012, convicting him of murder in the second degree, criminal possession of a weapon in the second degree (two counts), criminal possession of marijuana in the fifth degree, and criminal pos-

session of stolen property in the fifth degree, upon a jury verdict, and imposing sentence. The appeal brings up for review so much of an order of the same court (Honorof, J.) dated June 7, 2011, as denied, after a hearing pursuant to a stipulation in lieu of motions, the suppression of the defendant's statements to law enforcement officials relating to the murder charge.

Ordered that the judgment is modified, on the law, by vacating the convictions of murder in the second degree, criminal possession of a weapon in the second degree (two counts), and criminal possession of stolen property in the fifth degree and vacating the sentences imposed thereon; as so modified, the judgment is affirmed, suppression of the defendant's statements to law enforcement officials relating to the murder charge is granted, the order dated June 7, 2011, is modified accordingly, and the matter is remitted to the Supreme Court, Nassau County, for a new trial on those counts of the indictment.

On December 13, 2010, individuals in a tattoo parlor located in Carle Place were robbed at gunpoint by two masked individuals. One of the items stolen was a Blackberry cell phone. Surveillance footage from a location near the tattoo parlor showed that a black Hyundai Sonata with tinted windows was present in the parking lot behind the tattoo parlor at the time of the robbery. Nassau County police were assigned to investigate the robbery.

Two days later, on December 15, 2010, a 19-year-old male was shot and killed by a masked individual as he sat in a parked vehicle at a gas station in Hempstead. An eyewitness to the shooting reported that the shooter had arrived at the gas station in a black Hyundai Sonata with tinted windows. The eyewitness informed Nassau County police that the Sonata remained parked on the street near the gas station while the shooting occurred and that, after the shooting, the shooter got back into the Sonata before it sped away from the scene.

On December 20, 2010, the defendant was pulled over by Nassau County police in Freeport while he was driving a black Hyundai Sonata with tinted windows. A police officer testified that the defendant was initially stopped for minor traffic infractions, but that he was ultimately arrested after loose marijuana was observed on his pants. The police searched the Sonata and recovered a Blackberry cell phone. The defendant informed the police that the Blackberry cell phone was not his. Upon further investigation, the police identified the Blackberry cell phone as the one that had been stolen from the tattoo parlor days earlier. The police impounded the Sonata and retained the Blackberry

cell phone pending further investigation into the robbery. However, the defendant was charged only with a misdemeanor count of criminal possession of marijuana. At arraignment on the following day, the defendant was assigned an attorney to represent him, and was released on bail.

On December 23, 2010, the defendant was driving a different vehicle in the vicinity of Roosevelt. A Nassau County police officer followed the defendant's vehicle and pulled him over for an alleged traffic infraction. The defendant was ultimately arrested by the officer for possession of stolen property in connection with the stolen Blackberry cell phone that had previously been recovered from the Sonata. The defendant was transported to the police station where he was detained and intermittently questioned for six hours.

While the defendant was in the custody of the Nassau County police, two detectives working in tandem alternatively interrogated him about his role in the robbery of the tattoo parlor and his role in the shooting at the gas station. The defendant ultimately signed a series of written statements in which he admitted that he was present at the scene of the robbery and at the scene of the shooting because he had driven other individuals to those locations in the black Sonata.

The defendant was charged with, among other crimes, murder in the second degree, robbery in the first degree, robbery in the second degree, criminal possession of a weapon in the second degree, criminal possession of marijuana in the fifth degree, and criminal possession of stolen property in the fifth degree. Pursuant to a stipulation in lieu of motions, the defendant sought, inter alia, severance of the counts associated with the murder charge from the counts associated with the robbery charges. The defendant also sought suppression of the written statements that he made to members of the Nassau County Police Department on the ground that his right to counsel had been violated when he was questioned without first obtaining a waiver of his right to counsel in the presence of the attorney who had been assigned to represent him in connection with the marijuana charge.

In an order dated March 25, 2011, the Supreme Court (Sullivan, J.) denied severance of the counts of the indictment associated with the murder charge from the counts associated with the robbery charges. The court determined that joinder of the various charges was warranted since proof of the robbery would be material and admissible in evidence at a trial on the murder charge.

In a separate order dated June 7, 2011, made after a hear-

ing, the Supreme Court (Honorof, J.) granted suppression of the written statements that related to the robbery. The court determined that questioning of the defendant on the robbery charges after he had been assigned counsel in connection with his marijuana arrest violated his right to counsel because the two matters were related. However, the court concluded that questioning of the defendant on the murder charge did not violate his right to counsel because that charge was unrelated to the marijuana charge. Accordingly, the court denied suppression of the written statements relating to the murder charge.

At the ensuing jury trial, the People presented the written statements that the defendant had made to law enforcement officials in which he implicated himself in the shooting at the gas station. The jury found the defendant guilty of, among other crimes, murder in the second degree. The jury acquitted the defendant of all charges relating to the robbery. The defendant was subsequently sentenced to, inter alia, an indeterminate term of imprisonment of 20 years to life on the murder conviction. The defendant appeals, arguing, among other things, that the Supreme Court erred in denying suppression of the written statements to law enforcement officials relating to the murder charge. We modify.

The right to counsel arises from the due process guarantee in the New York State Constitution, the entitlement to effective assistance of counsel, and the privilege against compulsory self-incrimination (*see People v Lopez*, 16 NY3d 375, 380 [2011]; *People v Arthur*, 22 NY2d 325, 328 [1968]). This right is referred to as "indelible" (*People v Lopez*, 16 NY3d at 380) because "[o]nce an attorney enters the proceeding, the police may not question the defendant in the absence of counsel unless there is an affirmative waiver, in the presence of the attorney, of the defendant's right" (*People v Arthur*, 22 NY2d at 329; *see People v Johnson*, 24 NY3d 639, 644 [2014]). Accordingly, "[w]hen an attorney enters a case to represent the accused, the police may not question the accused about that matter regardless of whether the person is in police custody" (*People v Lopez*, 16 NY3d at 380). "If, however, the police seek to question the suspect about a matter that is not related to the case that the attorney is handling, different rules apply" (*id*.).

The Court of Appeals has recognized two categories of cases in which the attachment of counsel on one crime may preclude the police from interrogating a suspect on the subject of another crime. In *People v Cohen* (90 NY2d 632 [1997]), the Court of Appeals stated that "where the two criminal matters are so

closely related transactionally, or in space or time, that questioning on the unrepresented matter would all but inevitably elicit incriminating responses regarding the matter in which there had been an entry of counsel[,] . . . interrogation on the unrepresented crime is prohibited even in the absence of direct questioning regarding the crime on which counsel had appeared" (*People v Cohen*, 90 NY2d at 638-639; *see People v Carl*, 46 NY2d 806, 807-808 [1978]; *People v Vella*, 21 NY2d 249, 251 [1967]). With respect to the second category, the Court of Appeals has stated that "a statement may be subject to suppression where impermissible questioning on a represented charge was, when viewed as an integrated whole, not fairly separable from otherwise permissible questioning on the unrepresented matter and was, in fact, purposely exploited to aid in securing inculpatory admissions on the [unrepresented matter]" (*People v Grant*, 91 NY2d 989, 996 [1998, Titone, J., concurring in part]; *see People v Cohen*, 90 NY2d at 641; *People v Ermo*, 47 NY2d 863, 865 [1979]).

Here, the Supreme Court determined, after consideration of the testimony elicited at the suppression hearing, that questioning of the defendant on the robbery charges violated his right to counsel. This Court is bound by that determination, since we are statutorily precluded from reviewing a suppression issue that was decided in favor of the defendant (*see* CPL 470.15 [1]; *People v Ingram*, 18 NY3d 948, 949 [2012]; *People v Concepcion*, 17 NY3d 192, 196 [2011]; *People v Thompson*, 118 AD3d 922, 925 [2014]). Accordingly, this Court may not review or revisit the issue of whether questioning the defendant on the robbery charges violated his right to counsel in the context of this appeal.

In light of the determination that the defendant's right to counsel was violated when he was questioned with regard to the robbery charges, we further find that his right to counsel was violated by questioning on the factually interwoven homicide matter. Indeed, the robbery and the murder cases were so closely related that questioning about the gas station shooting "would all but inevitably elicit incriminating responses regarding" the robbery (*People v Cohen*, 90 NY2d at 638; *see People v Carl*, 46 NY2d at 807-808; *People v Vella*, 21 NY2d at 251). In this regard, we note that the People take the position, in opposing the defendant's contention regarding severance, that the defendant's role as the getaway driver for both the robbery and the shooting was so distinctly similar that "[e]vidence of each offense was . . . highly relevant and admissible to prove the identity of the perpetrator . . . and [the defendant's] intent

to commit those crimes." The People maintain that evidence of the murder was "material and admissible" as evidence to prove the robbery charges. Any statement by the defendant that he drove an individual in the black Sonata to and from the scene of the shooting would tend to incriminate him with respect to the robbery since, under the People's theory, the modus operandi was the same (*cf. People v Carl*, 46 NY2d at 807-808). Thus, the People's own arguments illustrate that the robbery and murder cases were interwoven. Furthermore, with regard to the second category of cases in which the attachment of counsel on one crime may preclude interrogation on another crime, the hearing record also supports a conclusion that the impermissible questioning of the defendant on the robbery charges was not fairly separable from questioning on the murder charge, and "was purposely exploitative in the sense that it was calculated to induce admissions" on the murder charge (*People v Grant*, 91 NY2d at 996).

Under the circumstances of this case, the Supreme Court should have granted suppression of the written statements to law enforcement officials relating to the murder charge. Accordingly, we vacate the defendant's convictions of murder in the second degree, criminal possession of a weapon in the second degree (two counts), and criminal possession of stolen property in the fifth degree and the sentences imposed thereon, and we remit the matter to the Supreme Court, Nassau County, for a new trial on those counts of the indictment. However, since there is no reasonable possibility that the improperly admitted evidence had a spillover effect on the conviction of criminal possession of marijuana in the fifth degree, the conviction for this crime may stand (*see e.g. People v Thompson*, 118 AD3d at 925).

In light of our determination, the defendant's contention that the Supreme Court erred in denying severance of the counts associated with the murder charge from the counts associated with the robbery charges is rendered academic. Furthermore, the defendant's contention that the sentence was excessive is also academic in light of the foregoing. The defendant's remaining contentions, raised in his pro se supplemental brief, are without merit. Mastro, J.P., Hall, Miller and LaSalle, JJ., concur.